Hugh F. Mullen and Constance R. Mullen v. Commissioner.
Mullen v. Commissioner
Docket No. 4881-67.
United States Tax Court
T.C. Memo 1970-211; 1970 Tax Ct. Memo LEXIS 146; 29 T.C.M. (CCH) 925; T.C.M. (RIA) 70211; July 27, 1970, Filed Hugh F. Mullen, pro se, 522 85th St., Brooklyn, N. Y. Jay S. Hamelburg, for the respondent. FEATHERSTON
Memorandum of Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1965 in the amount of $763.42, and an addition to tax under section 6651(a) [1] in the amount of $16.48. Due to concessions made by both parties, the only issue left for decision is whether petitioner is entitled to deduct, under section 162(a), amounts expended in 1965 in pursuit of a course of studies leading to a Master of *147 Arts Degree in philosophy. Findings of Fact Petitioners Hugh F. Mullen (hereafter petitioner) and Constance R. Mullen, husband and wife, were legal residents of Brooklyn, New York, at the time their petition was filed. They filed a joint Federal income tax return for 1965 with the district director of internal revenue, Brooklyn, New York. In 1957 or 1958, petitioner received a Bachelor of Science Degree from the School of Electrical Engineering at Purdue University. Thereafter he worked for the Director of Naval Communications for 2 1/2 years. Upon completing this work, he attended the Sloane School of Management at the Massachusetts Institute of Technology (hereafter M.I.T.) where he received a Master of Science Degree in June 1962. Petitioner's curriculum at M.I.T. included the study of the management of technology. In June of 1962, petitioner started to work for Northern Radio and was employed by this company during 1965. Petitioner's job with Northern Radio involved the management of technology, particularly the work of research scientists *148 and engineers. Until June of 1965, petitioner's work consisted primarily of assistance to the company president in interpreting data received from the research department. In June of 1965, petitioner became chief engineer and assumed more direct control of the engineering functions of the company. His work included the supervision of six engineers as well as draftsmen and other technicians. 926 Although his employer did not require him to obtain any further education, in September of 1963 petitioner commenced taking undergraduate courses in philosophy. In September of 1964, he embarked on a graduate program in the same area. During 1965, he incurred expenses in pursuing the following courses of study at Fordham University: Spring - 1965
Fall - 1965
Philosophy 218 - 18th Century History
Philosophy 275 - Philosophy of Man
Philosophy 422 - Metaphysical Text of
Philosophy 223 - The Nature, Origin
Thomas Aquinas
and Structure of Scientific Thought His studies culminated in a Master of Arts Degree in philosophy in June of 1966. It is not customary for engineering managers to pursue the study of philosophy as an aid to their work. On June 28, 1967, respondent *149 issued a notice of deficiency for 1965, disallowing the expenses incurred by petitioner in his study of philosophy. Ultimate Finding of Fact The course of study in philosophy was neither expressly required by petitioner's employer, nor undertaken to maintain or improve skills required by petitioner in his employment. Opinion Petitioner claims a deduction for his expenses in attending school under section 162(a) as "ordinary and necessary expenses paid * * * during the taxable year in carrying on any trade or business." He has elected to rely on the 1967 amendments [2] to the regulations promulgated under this section which provide, in part: § 1.162-5 Expenses for education. (a) General rule. Expenditures made by an individual for education * * * which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education - (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, * * * (b) Nondeductible educational *150 expenditures - * * * (2) Minimum educational requirements. (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. * * * * * * (3) Qualification for new trade or business. (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. * * * * * * Respondent does not contend that, within the meaning of these regulations, petitioner's studies will qualify him for a new trade or business, [3] or that they were part of the minimum educational requirements for his job. The narrow issue then is whether the philosophy *151 courses maintained or improved skills required by petitioner in his employment. Looking to the skills required in petition's employment, we find that it was his responsibility to "make certain that [the engineers] stayed on the right track, that they were interpreting the conclusions they were drawing from their experiments properly, and that a timely completion of the work was carried out." He also testified that it was part of his job to forecast the time and costs involved in completing research projects. Precisely what skills required in performing these duties were improved by petitioner's study of philosophy is not clear. At times in the course of his testimony he referred to his skill in communicating with his subordinates; [4] at other times he seemed to say the study of 927 philosophy improved his ability to appreciate the actual significance of the experiments. [5] Whatever the skills sought to be improved are, he testified that the most helpful benefit derived from his studies was a realization "that we have no absolutes" in the area of science. *152 We are not convinced that petitioner's new awareness improved his ability to communicate with his subordinates, a group of engineers with years of experience, or helped him distinguish assumptions from facts in interpreting their research experiments. Petitioner was unable to give any concrete explanation of how his study of philosophy helped him to perform better the tasks required by his occupation. Generalizations as to the values derived from studies of the Greek view of science and the works of Immanuel Kant and Thomas Aquinas do not meet the practical requirements of the regulations. It appears that any benefit actually derived from his studies was nothing more than an increase in his general level of competence, and from that it follows that the costs of the studies are not deductible. James A. Carroll, 51 T.C. 213 (1968), affd. 418 F. 2d 91 (C.A. 7, 1969). In James A. Carroll, supra at 215, this Court noted that it is not sufficient that "the petitioner's education is helpful to him in the performance of his employment." The education must be more than tenuously related to the skills required in the taxpayer's occupation; it must *153 be proximately related to those skills. There is no showing here how petitioner's study of philosophy was a direct or proximate benefit to him in his work. Petitioner does not qualify for the disputed deduction. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. Petitioner was entitled to rely on either the 1958 regulations employing a subjective test or the 1967 regulations employing an objective test. Rev. Rul. 68-191, 1968-1 C.B. 67↩.
3. See, e.g., Lawrance H. Bakken, 51 T.C. 603↩ (1969), on appeal (C.A. 9, April 11, 1969).
4. Petitioner in explaining his reasons for studying philosophy stated: A man says that he is going to be finished with his work in three weeks time based upon his interpretation of the results of his experiments. If you think in terms of his thought processes, you realize that what he is saying is that within three weeks [he] will be able to ask again questions that ought to be resolved by experiment and [he] is no closer to finishing [than he] will be at some time in the future. ↩
5. Petitioner testified: One of the fundamental problems that a person conducting an experiment has to contend with is that it is very difficult for him to know what he is taking for granted. In all of the cases where technology has gotten out of hand, it is invariably because an answer is determined from an experiment but in point of fact, it is not an answer to the question that was thought was being asked.↩